## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM WEBER<br>3129 Unruh Ave.<br>Philadelphia, PA 19134 | :<br>:<br>: CIVIL ACTION<br>: |
| Plaintiff, | : DOCKET NO.:<br>: |
| v. | :<br>: |
| HARBISON SUPERMARKETS, LLC<br>d/b/a Shoprite of Bridge & Harbison<br>5597 Tulip St.<br>Philadelphia, PA 19124<br>and<br>AMMONS SUPERMARKET, LLC<br>3745 Aramingo Ave.<br>Philadelphia, PA 19137 | :<br>: **JURY TRIAL DEMANDED**<br>:<br>:<br>:<br>:<br>:<br>: |
| Defendants. | :<br>: |

## CIVIL ACTION COMPLAINT

William Weber (*hereinafter* referred to as "Plaintiff," unless indicated otherwise), by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.     This action has been initiated by Plaintiff against Harbison Supermarkets, LLC and Ammons Supermarket, LLC (*hereinafter* collectively referred to as "Defendants") for violations of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et. seq.*), the Family and Medical Leave Act ("FMLA - 29 U.S.C. §2601 *et. seq.*), the Pennsylvania Human Relations Act ("PHRA")[1], the Fair Labor Standards Act ("FLSA - 29 U.S.C. § 201 *et. seq.*), and applicable state wage and hour law(s). Plaintiff asserts, *inter alia*, that he was

---

[1] Plaintiff's claims under the PHRA are referenced herein for notice purposes. He is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC.  Plaintiff must however file his lawsuit in advance of same because of the date of issuance of his federal right-to-sue-letter under the ADA.  Plaintiff's PHRA claims however will mirror identically his federal claims under the ADA.

discriminated against and unlawfully terminated by Defendants. As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2.      This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 and 1343(a)(4) because it arises under laws of the United States and seeks redress for violations of civil rights under the FMLA and the ADA.

3.      This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

4.      Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5.      Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed said charge with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff has properly exhausted his administrative proceedings before initiating this action by timely filing his Charge with the EEOC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

## PARTIES

6.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.      Plaintiff is an adult individual, with an address as set forth in the caption.

8.      Defendant Harbison Supermarkets, LLC and Ammons Supermarket, LLC are grocery stores that are jointly owned and operated by Larry Ammons. Both locations are listed under the same address with Pennsylvania's Secretary of State - 3745 Aramingo Ave., Philadelphia PA 19137.

9.      Upon information and belief, because of their interrelation of operations, common ownership or management, centralized control of labor relations, common financial controls, and other factors, Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership and management that they may be treated as a single and/or joint employer for purposes of the instant action.

10.     At all times relevant herein, Defendants acted by and through their agents, servants and/or employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FACTUAL BACKGROUND

11.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

12.     Plaintiff has and continues to suffer from Blue Rubber Bleb Nevus Syndrome – a very rare disability in which the blood vessels do not develop properly in an area of the skin or other body organs (particularly the intestines).

13.     Some of the side effects related to Plaintiff's disability include but are not limited to (1) blotches of blood appearing as blood clots on his outer skin; (2) gastrointestinal issues, which require more frequent bathroom usage wherein Plaintiff often excretes a significant amount of blood; (3) fatigue; and (4) flare-ups of pain.

3

Case 2:19-cv-04133-JMG   Document 1   Filed 09/10/19   Page 4 of 17

14.     As a result of Plaintiff's aforesaid disability, he is (at times) limited in his ability to perform some daily life activities, including but not limited to working and performing manual tasks.

15.     Plaintiff was hired to work for Defendants on or about February 2, 2018 as a "meat clerk."

16.     In his position as a meat clerk, Plaintiff was responsible for transferring packaged meat, cut by Defendants' butchers, to areas of the store for sale.

17.     Plaintiff's aforesaid position was entry level and many clerks could have (and did) perform similar work throughout the store.

18.     From in or about early-February of 2018 until in or about early-March of 2018, Plaintiff was trained at Defendants' Aramingo Ave location in Philadelphia, Pennsylvania before being transferred to Defendants' Tulip Street location in Philadelphia, Pennsylvania (*hereinafter* the "Tulip Street location") for the balance of his tenure with Defendants.

19.     While stationed at Defendants' Tulip Street location, Plaintiff was supervised by several individuals including but not limited to Managers, Matt (last name unknown – *hereinafter* "Matt"), Jon (last name unknown – *hereinafter* "Jon"), Scott (last name unknown – *hereinafter* "Scott"), Steve (last name unknown – *hereinafter* "Steve"), and Store Manager – Eric Burke (*hereinafter* "Burke")

20.     At all times during his employment with Defendants, Plaintiff was able to perform the duties of his job well with Defendants despite his rare health condition; however, Plaintiff did need reasonable accommodations at times, including but not limited to the ability to be late to work or leave early on occasions and the ability to miss 1-2 days of work per month in order to care for and treat for his aforementioned disability.

21.     Plaintiff apprised Defendants' management (identified in Paragraph 19 of this Complaint) of his aforesaid disability and need for reasonable medical accommodations after transferring to Defendants' Tulip Street location in or about March of 2018.

22.     After apprising Defendants' management of his disability and need for accommodations (discussed *supra*), Plaintiff began being subjected to a discriminatory and hostile work environment by Defendants' management based on his actual and/or perceived disabilities, as well as his need for reasonable medical accommodations.

23.     For example, Plaintiff was treated in a rude and demeaning manner and endured derogatory and offensive comments about and/or related to his disability (primarily by Matt and Jon), including but not limited to (1) consistently saying that they would see Plaintiff in an hour when he had to used the restroom – despite never taking that long; (2) telling other co-workers "don't hit him, he will need to take a sh*t;" (3) telling Plaintiff not to strain himself or he will "need to take a shi*t;" and (4) telling Plaintiff that he should have never been hired due to his accommodation needs.

24.     In addition to the discriminatory comments and behavior that Plaintiff was forced to endure after transferring to Defendants' Tulip Street location, Plaintiff was also issued discriminatory and pretextual discipline directly related to (1) his disability; (2) his need for accommodations; and (3) Defendants' complete and utter failure to engage in the interactive process with Plaintiff and accommodate his disability.

25.     Between March of 2018 and November of 2018, Plaintiff was issued several disciplinary write-ups and was suspended on various occasions due to either his tardiness or absenteeism. However, it was known to Defendants' management that (1) the majority (if not all) of Plaintiff tardiness and absenteeism was related to his aforesaid disability; (2) Plaintiff had

verbally requested reasonable accommodations in the form of being late and/or absent (on occasion) due to his aforesaid health conditions, which Defendants' management completely ignored; and (3) each time Plaintiff was late or absent due to his disability, he would inform Defendants' management of same.

26.     As a result of Defendants' management aforesaid discriminatory behavior and failure to accommodate Plaintiff, Plaintiff spoke to Defendant's Human Resources Representative, Samantha Gough (*hereinafter* "Gough") and informed her that he was being issued discriminatory discipline for being late and/or absent, even though his latenesses and absences were due to his aforementioned disability.

27.     Instead engaging in the interactive process with Plaintiff to determine if he could be given a reasonable medical accommodation, Gough simply responded by saying that he was not qualified for FMLA because he had not worked there for one year (and therefore, there was nothing she could do for him).

28.     In response to Defendants' constant discrimination and refusal to adhere to his verbal requests for medical accommodations, Plaintiff obtained an accommodation note from his physician on November 2, 2018 and presented it to multiple levels of management within Defendants, including but not limited to Matt and Burke.

29.     Plaintiff's November 2, 2018 doctor's note specifically stated:

> To Whom It May Concern:
>
> This letter is regarding William Weber []. Mr. Weber is a patient of this primary care practice. Mr. Weber has an ongoing health condition, it is to be expected that he may need 2 days off per month from work. Additional it would be beneficial if he had two consecutive days off per week. We look forward to completing his Family Medical Leave Act paperwork, as soon as he is eligible for this benefit after 2/2/19.

30.     In response to receiving Plaintiff's November 2, 2018 medical note, Defendants' management outright denied Plaintiff's written request for an accommodation without first engaging in any interactive process.

31.     Defendants tried to rationalize their decision to deny Plaintiff's November 2, 2018 written accommodation request by stating that (1) they could not honor his accommodation request due to alleged business needs; (2) they could not show favoritism by giving him two days off per month; and (3) everyone has to be treated the same under Defendants' policies.

32.     Following Plaintiff's written request for medical accommodations and Defendants' denial of same (discussed in Paragraphs 28-31 of the instant Complaint), Plaintiff was subjected to increased discriminatory and retaliatory treatment, including but not limited to being pretextually reprimanded on a consistent basis and ultimately being terminated by Burke in late-December of 2018 for being tardy.

33.     In or about early-January of 2019, Plaintiff's employment with Defendants was reinstated through his union grievance process; however, Plaintiff was forced to sign a document that another incident of lateness would result in his termination (which was discriminatory and retaliatory in and of itself).

34.     Plaintiff was only employed approximately two weeks after being reinstated to his employment with Defendants in early-January of 2019 before again being pretextually terminated.

35.     On or about January 15, 2019, Plaintiff was informed by Burke that he was again being terminated from his employment with Defendants.

36.     The reasons given by Burke for Plaintiff's second termination (discussed *supra*) was attendance and falsification of his time sheet.

37.     The aforesaid reasons given for Plaintiff's termination are directly related to Plaintiff's disability and need for accommodations, as well and Defendants' failure to accommodate same.

38.     First, Defendants counted absences against Plaintiff which were directly related to his aforesaid disability and should have been excused a reasonable accommodation under the ADA.

39.     Second, Plaintiff did not falsify his time sheet. In fact, on the day in question, Plaintiff experienced a flare-up of pain related to his aforesaid health condition and communicated same with Defendants' management via Defendants' walk-talkie system.

40.     Due to the flare-up of pain that Plaintiff was experiencing on the day in question and the fact that Plaintiff had worked through his 15 minute break earlier that day, Plaintiff informed Defendants' management that he was going to leave early that day (a reasonable accommodation under the ADA) but would put on his time sheet that he was leaving at 7:00 p.m. rather than 6:47 p.m., due to the fact that he worked through his 15 minute break earlier that day.[2]

41.     Plaintiff believes and therefore avers that he was terminated for false and pretextual reasons because of his actual/perceived/record of disabilities, in retaliation for requesting reasonable accommodations, and/or because he objected to and expressed concerns about mistreatment based on his health conditions.

_____

[2] Typically, Plaintiff would clock out using Defendants' electronic time system; however, Defendants' management forced Plaintiff to use a hand-written time sheet upon his return from his first termination (in December of 2018) rather than placing him back into Defendants' electronic time system.

## COUNT I
## Violations of the Americans with Disabilities Act, as Amended ("ADAAA")
### ([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; [3] Failure to Accommodate; [4] Hostile Work Environment)

42.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

43.     Plaintiff was subjected to a hostile work environment during his period of employment through disparate treatment, refused accommodations, pretextual discipline (including various suspensions), derogatory comments, and demeaning and/or discriminatory treatment towards him due to his [1] actual/perceived/record of disabilities; [2] record of impairment; [3] requested medical accommodations; and/or [4] his objections and/or expressed concerns about Defendants' failure to comply with the ADA as it pertains to his own health conditions and need for accommodations.

44.     Furthermore, Plaintiff believes and avers that he was issued discipline, suspended, and terminated on two different occasions because of [1] his actual/perceived/record of disabilities; [2] his record of impairment; [3] his requested medical accommodations; [4] his objections and/or expressed concerns about Defendants' failure to comply with the ADA as it pertains to his own health conditions and need for accommodations; and/or [5] Defendants' failure to engage in the interactive process with Plaintiff and accommodate his health conditions.

45.     These actions as aforesaid constitute violations of the ADAAA.

## COUNT II
## Violations of the Family and Medical Leave Act ("FMLA")
### (Interference and Retaliation)

46.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

47.     Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

48.     Plaintiff requested leave from Defendants, her employers, with whom she had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

49.     Plaintiff had at least 1,250 hours of service with the Defendants during her last full year of employment.

50.     Defendants are engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

51.     Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

52.     Defendants committed interference and retaliation violations of the FMLA by: (1) issuing Plaintiff discipline, suspending him, and/or terminating his employment for requesting future FMLA leave; (2) by considering Plaintiff's future FMLA leave needs in making the decision to issue him discipline, suspend him, and/or terminated his employment twice; (3) terminating his employment on two separate occasions in order to avoid having to provide FMLA leave to Plaintiff in the near future (once he became eligible); and (4) making negative comments to and/or engaging in conduct which discouraged Plaintiff from exercising his FMLA rights once he became eligible and which would discourage, dissuade and/or chill a reasonable person's desire to request and/or take FMLA leave.

53.     These actions as aforesaid constitute violations of the FMLA.

## COUNT III
## Violations of the Fair Labor Standards Act ("FLSA")
### (Failure to Pay Overtime Wages)

54.     The foregoing paragraphs are incorporated herein as if set forth in full.

55.     At all times relevant herein, Defendants are, and continue to be, "employer[s]" within the meaning of the FLSA.

56.     At all times relevant herein, Plaintiff was an "employee" within the meaning of the FLSA.

57.     The FLSA requires covered employers, such as Defendants, to minimally compensate its "non-exempt" employees, such as Plaintiff, at a rate of 1.5 times the employee's regular rate of pay for each overtime hour that the employee works (*i.e.* hours in excess of 40 hours in a workweek).

58.     At all times during his employment with Defendants, Plaintiff was a "non-exempt" employee within the meaning of the FLSA.

59.     Defendants knew that Plaintiff was a "non-exempt" employee within the meaning of the FLSA.

60.     On occasion, throughout his employment with Defendants, Plaintiff would work over 40 hours in one week.

61.     Typically, Plaintiff would exceed 40 hours in one week when he was required to work Sundays for Defendants.

62.     However, Defendants never counted the hours that Plaintiff worked on any Sunday when computing the total number of hours that Plaintiff worked that week.

63.     Instead, if Plaintiff worked a Sunday, Defendants would simply increase Plaintiff's hourly rate by $1.00 for any hours that he worked on that Sunday (including hours which would put him over 40 hours in one week).

64.     Therefore, Defendants never paid Plaintiff 1.5 times his regular rate for any hours that he worked over 40 in one week.

65.     As a result of Defendants' failure to pay Plaintiff the overtime compensation due him, Defendants violated the FLSA and caused Plaintiff to suffer damages in the form of unpaid overtime compensation.

## COUNT IV
### Violations of the Pennsylvania Minimum Wage Act ("PMWA")
### (Failure to Pay Overtime Wages)

66.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

67.     Plaintiff re-asserts and re-alleges each and every allegation as set forth in Count III of the instant action; as such actions constitute identical violations of the PMWA.

## COUNT V
### Violation of the Pennsylvania Wage Payment Collection Law ("WPCL")
### (43 P.S. 260.3(a)-(b))

68.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

69.     Throughout Plaintiff's employment with Defendants, he would often times work through his breaks.

70.     Even though Defendants' management was aware that Plaintiff had worked through his breaks, Defendants would still unlawfully deduct the allocated time for said breaks from his paycheck.

12

71.     Therefore, Defendants failed to compensate Plaintiff for all wages owed during his employment, including but not limited to any time that Plaintiff worked instead of taking his scheduled breaks.

72.     These actions as aforesaid constitute violations of the Pennsylvania Wage Payment and Collection Law.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendants are to be prohibited from continuing to maintain their illegal policy, practice or custom of discriminating/retaliating against employees and are to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B.     Defendants are to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date he first suffered retaliation/discrimination at the hands of Defendants until the date of verdict;

C.     Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law(s) alleged asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D.     Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

E.     Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F.      Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G.      Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law.  Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:
Ari R. Karpf, Esq.
3331 Street Road
Two Greenwood Square
Building 2, Ste. 128
Bensalem, PA 19020
(215) 639-0801

Dated: September 10, 2019

14

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

William Weber

v.

Harbison Supermarkets, LLC d/b/a
Shoprite of Bridge & Harbison, et al.

CIVIL ACTION

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                                  ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
     and Human Services denying plaintiff Social Security Benefits.                                        ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.            ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
     exposure to asbestos.                                                                                 ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
     commonly referred to as complex and that need special or intense management by
     the court. (See reverse side of this form for a detailed explanation of special
     management cases.)                                                                                    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.                         (X )

| 9/10/2019 | | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 639-0801 | (215) 639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff:  3129 Unruh Avenue, Philadelphia, PA 19134

Address of Defendant:  5597 Tulip Street, Philadelphia, PA 19124; 3745 Aramingo Avenue, Philadelphia, PA 19137

Place of Accident, Incident or Transaction:  Defendants place of business

---

**RELATED CASE, IF ANY:**

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☒

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE:  9/10/2019  _____  ARK2484 / 91538
*Attorney-at-Law / Pro Se Plaintiff*  *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.  Federal Question Cases:**
- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☒ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases *(Please specify):* _____

**B.  Diversity Jurisdiction Cases:**
- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability -- Asbestos
- ☐ 9. All other Diversity Cases *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Ari R. Karpf , counsel of record *or pro se plaintiff*, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE:  9/10/2019  _____  ARK2484 / 91538
*Attorney-at-Law / Pro Se Plaintiff*  *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
WEBER, WILLIAM

## DEFENDANTS
HARBISON SUPERMARKETS, LLC d/b/a SHOPRITE OF BRIDGE & HARBISON, ET AL.

**(b)** County of Residence of First Listed Plaintiff    Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Karpf, Karpf & Cerutti, P.C.; 3331 Street Road, Two Greenwood Square, Suite 128, Bensalem, PA 19020; (215) 639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| 1   U.S. Government Plaintiff | X 3   Federal Question *(U.S. Government Not a Party)* |
| 2   U.S. Government Defendant | 4   Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated or Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury - Product Liability | 690 Other | 423 Withdrawal 28 USC 157 | 376 Qui Tam (31 USC 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ Pharmaceutical Personal Injury | | | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | Product Liability | | **PROPERTY RIGHTS** | 410 Antitrust |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability | 368 Asbestos Personal Injury Product Liability | | 820 Copyrights | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine | | | 830 Patent | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | **PERSONAL PROPERTY** | | 835 Patent - Abbreviated New Drug Application | 460 Deportation |
| | 350 Motor Vehicle | 370 Other Fraud | **LABOR** | 840 Trademark | 470 Racketeer Influenced and Corrupt Organizations |
| 153 Recovery of Overpayment of Veteran's Benefits | 355 Motor Vehicle Product Liability | 371 Truth in Lending | 710 Fair Labor Standards Act | **SOCIAL SECURITY** | 480 Consumer Credit |
| 160 Stockholders' Suits | 360 Other Personal Injury | 380 Other Personal Property Damage | 720 Labor/Management Relations | 861 HIA (1395ff) | 490 Cable/Sat TV |
| 190 Other Contract | 362 Personal Injury - Medical Malpractice | 385 Property Damage Product Liability | 740 Railway Labor Act | 862 Black Lung (923) | 850 Securities/Commodities/ Exchange |
| 195 Contract Product Liability | | | 751 Family and Medical Leave Act | 863 DIWC/DIWW (405(g)) | 890 Other Statutory Actions |
| 196 Franchise | | | 790 Other Labor Litigation | 864 SSID Title XVI | 891 Agricultural Acts |
| | | | 791 Employee Retirement Income Security Act | 865 RSI (405(g)) | 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | 895 Freedom of Information Act |
| 210 Land Condemnation | 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | 896 Arbitration |
| 220 Foreclosure | 441 Voting | 463 Alien Detainee | | 870 Taxes (U.S. Plaintiff or Defendant) | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 230 Rent Lease & Ejectment | 442 Employment | 510 Motions to Vacate Sentence | | 871 IRS—Third Party 26 USC 7609 | 950 Constitutionality of State Statutes |
| 240 Torts to Land | 443 Housing/ Accommodations | 530 General | **IMMIGRATION** | | |
| 245 Tort Product Liability | X 445 Amer. w/Disabilities - Employment | 535 Death Penalty | 462 Naturalization Application | | |
| 290 All Other Real Property | 446 Amer. w/Disabilities - Other | **Other:** | 465 Other Immigration Actions | | |
| | 448 Education | 540 Mandamus & Other | | | |
| | | 550 Civil Rights | | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| X 1 Original Proceeding | 2 Removed from State Court | 3 Remanded from Appellate Court | 4 Reinstated or Reopened | 5 Transferred from Another District *(specify)* | 6 Multidistrict Litigation - Transfer | 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101); FMLA (29USC2601); FLSA (29USC201)
Brief description of cause:
Violations of the ADA, FMLA, FLSA, PHRA and applicable state wage and hour law(s).

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   X Yes   No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE           DOCKET NUMBER

DATE    9/10/2019

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG. JUDGE

[ Print ]    [ Save As... ]    [ Reset ]